IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-169-FL

| | |
|---|---|
| NOEL A. DALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| TWC ADMINISTRATION LLC, ) | |
| s/h/a TIME WARNER CABLE, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on the motion for summary judgment, pursuant to Fed. R. Civ. P. 56, filed by defendant TWC Administration LLC, s/h/a Time Warner Cable ("defendant") (D.E. 29). Plaintiff Noel A. Dale ("plaintiff" or "Dale"), who is proceeding pro se, opposes the motion. The motion was referred to the undersigned for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 15 Apr. 2016). The motion has been briefed and is ripe for adjudication. For the reasons set forth below, it will be recommended that defendant's motion be allowed.

## BACKGROUND

### I. CASE HISTORY

Plaintiff commenced this employment discrimination action against "Time Warner Cable" ("TWC") on 19 March 2014 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging that he was discriminated against on the basis of his race and religion. (*See* Mot. to Proceed *In Forma Pauperis* ("IFP") (D.E. 1); Am. Mot. to Proceed IFP (D.E. 4); Order Allowing Am. Mot. to Proceed IFP (D.E. 5); Compl. (D.E. 6)). Defendant moved to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed. R.

Civ. P. 12(b)(6). (*See* Mot. to Dismiss (D.E. 12)). In its motion, defendant asserted that TWC was an improper defendant because it is not a legal entity and was not plaintiff's employer. (*Id.* at 1 ("Time Warner Cable is an improperly named defendant in this action as it is not a legal entity and it was not Plaintiff's employer. The actual entity that employed Plaintiff was TWC Administration LLC. Defendant will stipulate to a corrected caption if one is filed by Plaintiff.")).

A memorandum and recommendation ("M&R") was issued on 4 December 2014 recommending that defendant's motion to dismiss be allowed and plaintiff's complaint be dismissed in its entirety. (M&R (D.E. 20) 4). The court adopted the M&R, but in light of new allegations made in plaintiff's objections to the M&R, allowed plaintiff leave to amend his complaint to include those allegations. (*See* 9 Mar. 2015 Ord. (D.E. 23) 4-5). Plaintiff filed an amended complaint (D.E. 24) on 10 April 2015, which included changing the entity named as defendant. Defendant filed its answer (D.E. 25) to the amended complaint on 24 April 2015. Discovery closed on 15 December 2015. (*See* Case Management Ord. (D.E. 28) § I.C.). Defendant subsequently filed the instant motion for summary judgment.

## II.  FACTUAL BACKGROUND[1]

Plaintiff, an African-American, was hired by defendant on 25 March 2011 as an outbound sales agent in defendant's sales channel organization responsible for selling telephone, television, and internet services. (Am. Compl. ¶ 6; Def.'s Ans. to Am. Compl. ¶ 6; Def.'s L. R. 56.1(a)(1) Stmt. of Undisputed Facts (D.E. 33) ¶¶ 1, 2; Pl.'s Resp. to Def.'s L. R. 56.1(a)(1) Stmt. (D.E. 39) ¶¶ 1, 2). Although plaintiff applied for promotions, including to the positions of

---

[1] For purposes of this factual background section, the court is including references to allegations in plaintiff's amended complaint even when not admitted because of their utility in clarifying the facts otherwise of record. The factual background reflects facts taken in the light most favorable to plaintiff, as required. *See, e.g., Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 500 (4th Cir. 2015).

account executive and "TV position," defendant denied them. (Excerpted Dep. of Dale ("Dale Dep.") (D.E. 34-1 at pp. 12-36) 121:6-11[2]; *see also id.* at 121:12-21; 142:10-17; Am. Compl. ¶ 7; Def.'s Ans. to Am. Compl. ¶ 7).

In July of 2012, defendant informed plaintiff that the job duties for his organization were being expanded to include home security systems, known as Intelligent Home, and that, as a result, the employees in the organization would be required to be fingerprinted. (Am. Compl. ¶ 8; Def.'s Ans. to Am. Compl. ¶ 8; Dale Dep. 68:2-22; 69:23 to 70:2). Plaintiff told defendant that fingerprinting was contrary to his sincere religious beliefs. (Am. Compl. ¶ 9; Dale Dep. 83:11-14, 18-22). He also informed defendant that he did not willingly give out information about his body, including fingerprinting, without having background information on where the information was going. (Dale Dep. 83:11-18). Plaintiff requested that his religious beliefs be accommodated, but defendant told him that company policy required fingerprinting and that it was unsure if an exception could be made. (Am. Compl. ¶ 10; Dale Dep. 98:18 to 99:25). Defendant requested that plaintiff reconsider his refusal to be fingerprinted. (Dale Dep. 121:22 to 122:13). At no time did defendant inform plaintiff that the requirement that he be fingerprinted was one imposed by state law. (Dale Decl. (D.E. 38) ¶ 1).

Defendant advised plaintiff that if he continued to refuse to be fingerprinted, he could not remain in his position. (Dale Dep. 113:2-15). Defendant told plaintiff that he would be given 30

---

[2] In both his response and surreply to defendant's motion, plaintiff states that, given his IFP status, he was unable to afford a copy of the transcript of his deposition and that defendant has omitted from the excerpts it filed testimony that would support his opposition to defendant's motion. (Pl.'s Resp. to Mot. (D.E. 37) 2, 12-13; Pl.'s Surreply (D.E. 45) 6-7). Plaintiff, of course, could reasonably be expected to be familiar with his own testimony and the information about which he testified. In addition, he did not file a motion seeking production of the transcript. Nonetheless, to ensure no prejudice to plaintiff, the court in its discretion ordered defendant to file and serve on plaintiff a complete copy of the transcript, which it did. (*See* 10 Aug. 2016 Text Order; Full Transcript (D.E. 47)). The court has reviewed the entire transcript and all the exhibits to it, including the specific portions of his testimony that plaintiff contends would support his opposition to the motion. (*See* Pl.'s Resp. 12-13). The court finds that the portions of the deposition omitted by defendant are clearly not material to the issues presented by its motion. No argument by the parties regarding the omitted portions is therefore warranted, and the court will proceed with without it.

3

days to secure another TWC position outside of the sales channel organization that did not involve selling or promoting Intelligent Home. (Def.'s L. R. 56.1 Stmt. ¶ 17; Pl.'s Resp. to Def.'s L. R. 56.1 Stmt. ¶ 17). But defendant contends that it subsequently determined that plaintiff was not eligible for a transfer, because its Internal Movement of Talent & Rehire Policy ("Internal Transfer Policy") (D.E. 34-1 at pp. 9-11) required an employee to be in "good standing" in order to be transferred, and plaintiff was not in "good standing" as defined in the policy. (Def.'s L. R. 56.1 Stmt. ¶ 18). Plaintiff contends that the Internal Transfer Policy did not apply to him because it was issued by an entity other than defendant (Pl.'s Resp. to Def.'s L. R. 56.1 Stmt. ¶¶ 18, 19), although he admits that he did not make a request to be internally transferred to another position (Dale Dep. 113:16-24; 143:8-12).

On 27 August 2012, defendant terminated plaintiff in response to his refusal to be fingerprinted. (Am. Compl. ¶ 12; Def.'s Ans. to Am. Compl. ¶ 12). Plaintiff alleges that a white employee in his organization who refused to be fingerprinted kept his job (Am. Compl. ¶ 11; Dale Dep. 143:24 to 144:12), but he admitted that he had no firsthand knowledge of the refusal and had overheard mention of it. (Dale Dep. 112:10-13; 143:24 to 144:12).

Plaintiff asserts claims pursuant to Title VII on the basis of religion (*see* Am. Compl. 5-6 ¶¶ 14, 15, 14 (second), 15 (second)) and race (*see id.* 6 ¶¶ 16-18). He also asserts a claim pursuant to the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2 ("NCEEPA"). (*See id.* at 6-7 ¶¶ 18-19). In its answer to the amended complaint, defendant denies any wrongdoing. (*See generally* Def.'s Ans. to Am. Compl.).

## DISCUSSION

I.  **STANDARD OF REVIEW**

   A.  **Summary Judgment Standard**

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Design Res., Inc.*, 789 F.3d at 500; *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *see also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the nonmoving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The nonmoving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

5

The Supreme Court has held that trial courts should not analyze discrimination claims any differently than other ultimate questions of fact for purposes of a summary judgment analysis. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Nonetheless, "[c]ourts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues." *Curry v. Guardian Indus. Corp.*, No. 05:2054-JFA-JRM, 2007 WL 172510, at *3 (D.S.C. 18 Jan. 2007).

**B.     *McDonnell Douglas* Framework**

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can pursue a claim for employment discrimination pursuant to Title VII by producing either direct evidence or circumstantial evidence that raises a genuine issue of material fact that an employer's actions were motivated by discriminatory intentions. *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 859-60 (M.D.N.C. 2003) ("To prove his claims, Plaintiff may rely on direct evidence, indirect evidence, or a combination of both direct and indirect evidence."). In the absence of direct evidence of animus based on religion or race, as here, the court analyzes a claim of employment discrimination under the burden-shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Guessous v. Fairview Prop. Inv., LLC*, ___ F.3d ___, No. 15-1055, 2016 WL 3615780, at *6 (4th Cir. 6 July 2016) ("The [McDonnell Douglas] framework applies in employment discrimination and retaliation cases where a plaintiff does not present sufficient direct or circumstantial evidence showing that an adverse employment action was motivated by intentional discrimination aimed at the plaintiff's protected characteristic(s)."); *Rishel*, 297 F. Supp. 2d at

6

860 ("In this case, Plaintiff has only offered indirect evidence of discrimination. Therefore, under the traditional principles of federal employment-discrimination law, Plaintiff must use the three-step indirect method of proof established by the Supreme Court in *McDonnell Douglas*.").

In the first step of the *McDonnell Douglas* framework, the plaintiff must make a prima facie showing of discriminatory action, adducing sufficient facts to show that the employer treated him differently because of his race and/or religion. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). The burden of establishing a prima facie case is not an onerous one. *Evans*, 80 F.3d at 960. Once a plaintiff has made the prima facie showing, he or she has established a rebuttable presumption of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Evans*, 80 F.3d at 959.

The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action. *Evans*, 80 F.3d at 959.

If the employer meets this burden, the burden shifts back to the plaintiff to show that the reason offered by the defendant was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413, 415-17 (4th Cir. 1998); *Westbrook v. N.C. A&T St. Univ.*, 51 F. Supp. 3d 612, 618 (M.D.N.C. 2014) ("After the defendant provides such [purportedly legitimate, nondiscriminatory] reason, the plaintiff must then establish that such reason is pretextual, and that the defendant's actions were 'actually motivated by illegal considerations.'" (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996))). Pretext can be established with evidence that the employer's explanation for an employment decision is "unworthy of credence" or is false. *Reeves*, 530 U.S. at 147. To survive summary judgment, the plaintiff must establish the presence

of issues of fact as to whether the defendant's explanation is pretextual. *See Burdine*, 450 U.S. at 255 n.10.

## II. PLAINTIFF'S RACE DISCRIMINATION CLAIMS

Plaintiff contends that he was discriminated against on the basis of his race in two ways: first, that several promotions he applied for while employed by defendant were denied on the basis of his race and, second, that his race served as the basis for defendant to deny his request for a religious accommodation and terminate his employment.

### A. Failure to Promote Claim

"To establish a prima facie case of failure to promote based on race, a plaintiff must show (1) that he belongs to a protected class; (2) that he applied for the position at issue; (3) that he was qualified for that job; and (4) that the defendant rejected his application under circumstances supporting an inference of unlawful discrimination." *Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 423 (E.D.N.C. 2015). Here, in satisfaction of the first element, there is no dispute that as an African-American plaintiff is a member of a protected class. Further, in satisfaction of the second element, defendant admitted in its answer to the amended complaint that plaintiff "applied for various positions during his employment with [defendant]" (Def.'s Ans. to Am. Compl. ¶ 7), and defendant testified that the positions that he sought but did not receive included account executive and "TV position" (Dale Dep. 121:6-11).

Plaintiff has not, however, adduced evidence satisfying the two remaining elements of a prima facie case. As for the third element, he cites no evidence showing that he was qualified for any of the positions for which he applied. Indeed, he presents no evidence on what the qualifications were. *See Christian v. S.C. Dep't of Labor Licensing & Regulation*, No. 14-2168, 2016 WL 3074312, at *7 (4th Cir. 1 June 2016) (affirming summary judgment where plaintiff

8

failed to present any evidence that employer acted with discriminatory intent when it awarded management positions to other individuals with greater qualifications than plaintiff). As to the fourth element, plaintiff presents no evidence that his applications for promotions were denied under circumstances supporting an inference of race discrimination. While he alleged in his amended complaint that the positions for which he applied were filled by less qualified white applicants (Am. Compl. ¶ 7), he admitted during his deposition that he did not know the identity of the persons who received these positions (Dale Dep. 121:12-21). *Pugh v. Montgomery Cty. Bd. of Educ.*, No. CV DKC 13-2862, 2016 WL 560793, at *6 (D. Md. 12 Feb. 2016) (finding plaintiff did not make out prima facie case where she did not put forth any evidence regarding the individuals hired for the positions she sought and "conjecture is not sufficient to satisfy her burden at the summary judgment stage"), *aff'd*, No. 16-1260, 2016 WL 3971742 (4th Cir. 25 July 2016); *Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011) (holding that plaintiff failed to show prima facie case for failure to promote claim where "the Court would be unable to infer that unlawful discrimination prevented his promotion" because plaintiff did not establish that the poisition was filled by a non-African-American employee).

Plaintiff has accordingly failed to establish a prima facie case of discrimination relating to promotion. *See Ramsey v. Dep't of Veterans Affairs*, No. CIV. WDQ-12-2375, 2013 WL 6154191, at *7 (D. Md. 21 Nov. 2013) (awarding summary judgment to employer where plaintiff failed to produce evidence that he applied for positions for which he was qualified); *Morris v. Thompson*, No. CIV.RDB 03 2856, 2004 WL 3623338, at *7 (D. Md. 29 Sept. 2004) ("[Plaintiff] cannot establish a prima facie case of discriminatory failure to promote. Most fundamentally, she has failed to identify any actual position for which she applied and was rejected."), *aff'd sub nom. Morris v. Sec'y, Dep't of Health & Human Servs.*, 134 F. App'x 636 (4th Cir. 2005).

Summary judgment should therefore be awarded to defendant on plaintiff's claim for failure to promote on the basis of race discrimination.

### B. Termination Claim

To establish a prima facie case supporting a claim that his termination from employment resulted from disparate treatment on account of his race, plaintiff must adduce sufficient facts to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (U.S. 2012).

On this claim, plaintiff obviously satisfies the first and third elements for a prima facie case. Leaving aside the second element and turning to the fourth, plaintiff testified that a white employee, John Holley, also refused to be fingerprinted but remained employed, whereas plaintiff was terminated for exactly the same conduct. (Dale Dep. 143:24 to 144:12). Plaintiff admits, however, that his belief that Mr. Holley refused to be fingerprinted was based on hearsay. (*Id.*). Plaintiff has produced no admissible evidence to support his contention regarding Mr. Holley. Plaintiff has therefore failed to establish the fourth element of a prima facie case of termination based on race discrimination. *See Rouse v. Fed. Exp.*, No. 4:10-CV-2275-RBH-TER, 2012 WL 3157009, at *6 (D.S.C. 22 June 2012) ("'Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment.'" (quoting *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 551 (D.S.C. 2009)), *rep. & recomm. adopted by* 2012 WL 3157007 (3 Aug. 2012); *Mungro v. Giant Food, Inc.*, 187 F. Supp. 2d 518, 523 (D. Md. 2002) (holding that although plaintiff named three employees treated differently from him, "he has produced no admissible evidence supporting these allegations" and "[c]onclusory and hearsay

evidence does not provide support sufficient to defeat a summary judgment motion"). Defendant should accordingly be awarded summary judgment on plaintiff's claim of termination based on race discrimination.

### III. PLAINTIFF'S RELIGIOUS DISCRIMINATION CLAIM

#### A. Applicable Legal Principles

A plaintiff asserting a religious discrimination claim pursuant to Title VII can do so either under a theory of disparate treatment on the basis of religion or, as here, an assertion that his employer failed to reasonably accommodate his sincere religious beliefs. *See Westbrook*, 51 F. Supp. 3d at 618 ("An employee may bring both a disparate treatment claim and a reasonable accommodation claim based on religious discrimination under Title VII."); *Baltgalvis v. Newport News Shipbuilding Inc.*, 132 F. Supp. 2d 414, 417 (E.D. Va.) ("Courts have recognized that employees may utilize two theories in asserting religious discrimination claims. These theories are termed the 'disparate treatment' and 'failure to accommodate' theories."), *aff'd*, 15 F. App'x 172 (4th Cir. 2001).

Title VII defines religion to include "'all aspects of religious observance and practice, as well as belief,'" and requires it to be accommodated "'unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.'" *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting 42 U.S.C. § 2000e(j)). The prima facie showing necessary for a religious accommodation claim requires a showing that "'(1) [plaintiff] has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Firestone*

11

*Fibers*, 515 F.3d at 312 (quoting *Chalmers,* 101 F.3d at 1019). Once a plaintiff has established a prima face case of discrimination on a failure to accommodate claim, "the burden of proof shifts to the employer to demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship—that is, it would have resulted in more than a de minimis cost to the employer." *Krizhner v. PurePOWER Techs., LLC*, No. CA 3:12-1802-MBS, 2013 WL 5332686, at *6 (D.S.C. 23 Sept. 2013) (citing *Firestone Fibers*, 515 F.3d at 313), *aff'd sub nom. Kirzhner v. Purepower Techs. LLC*, 566 F. App'x 239 (4th Cir. 2014).

### B. Plaintiff's Prima Facie Case

Here, for purposes of the instant motion, defendant concedes and the court finds that plaintiff's objection to being fingerprinted constitutes a bona fide religious belief and that he informed defendant of this belief.[3] *See, e.g., E.E.O.C. v. CONSOL Energy, Inc.*, No. 1:13CV215, 2016 WL 538478, at *2 (N.D.W. Va. 9 Feb. 2016) (upholding jury verdict finding plaintiff's objection to a hand scanner check-in policy was a bona fide religious belief). The first two elements of plaintiff's prima facie case are thereby satisfied. Defendant argues that plaintiff's prima facie case nevertheless fails for nonsatisfaction of the third element. It contends that the fingerprinting requirement cannot be considered an "employment requirement" imposed by defendant because, in fact, it was required by state law.

---

[3] The purported fact that plaintiff cited concern about distribution of the fingerprints, in addition to his religious beliefs, as a basis for his refusal to be fingerprinted does not vitiate his satisfaction of the second, notice element of the prima facie case. (*See* Dale Dep. 83:11-14, 18-22). To satisfy the notice element, there must simply be evidence that plaintiff notified his employer of the conflict between his religious beliefs and the employment requirement in order to "allow the company any sort of opportunity to attempt reasonable accommodation of [plaintiff's] beliefs." *Chalmers*, 101 F.3d at 1019. This standard is met here based on plaintiff's deposition testimony that he informed defendant of his religious objection and defendant's concession for purposes of this motion that he did so.

Specifically, North Carolina General Statutes § 74D-8(a) imposes registration obligations for any employee in the alarm systems business:

> (a)(1) All licensees of an alarm systems business shall register with the [Alarm Systems Licensing Board ("Board")] within 30 days after the employment begins, all of the licensee's employees that are within the State, unless in the discretion of the Director [of the Board], the time period is extended for good cause. To register an employee, a licensee shall submit to the Board as to the employee: set(s) of classifiable fingerprints on standard F.B.I. applicant cards; recent color photograph(s) of acceptable quality for identification; and statements of any criminal records as deemed appropriate by the Board.
>
> (2) Except during the period allowed for registration in subdivision (a)(1) of this section, no alarm systems business may employ any employee unless the employee's registration has been approved by the Board as set forth in this section.

N.C. Gen. Stat. § 74D-8(a).

Some courts have held that a requirement imposed by law cannot form the basis of the employment requirement for purposes of a prima facie case. For example, several courts have refused to find that a requirement that a plaintiff provide a Social Security number to be an employment requirement, since the requirement is one of federal law. *See, e.g., Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) ("[W]e agree with the District Court that the IRS, not defendants, imposed the requirement that Seaworth provide an SSN. . . . Thus, [plaintiff's] beliefs do not conflict with an *employment requirement*, . . . and he has not established a prima facie case of religious discrimination."); *Baltgalvis*, 132 F. Supp. 2d at 418-19 ("[T]his Court finds that [plaintiff] has failed to state a prima facie case of religious discrimination under Title VII. The Court reaches this conclusion based on the fact that the requirement that [plaintiff] provide her SSN to her employer is one imposed by federal law and merely implemented by [defendant]."). Other courts, however, have refused to extend the definition of employment requirement to exclude any requirement grounded in law but implemented by the employer. *See*

*Cherry v. Sunoco, Inc.*, No. 07-CV-223, 2009 WL 2518221, at *5 (E.D. Pa. 17 Aug. 2009) ("To accept Defendant's argument would establish a per se rule that if a requirement is mandated by law, then an employer need not even attempt to accommodate an employee's religious beliefs, even if it were feasible to do so without undue hardship.").

The court need not determine whether the fingerprinting requirement is an "employment requirement" because the next step in the burden-shifting analysis is dispositive of plaintiff's religious discrimination claim. For purposes of its analysis, the court will therefore assume without deciding that the fingerprint requirement is an "employment requirement" and that plaintiff has satisfied this final element of his prima facie case.

### C. Defendant's Burden to Show Reasonable Accommodation or Undue Hardship of Accommodation

The burden accordingly shifts to defendant to show either that a reasonable, though not necessarily total, accommodation was provided to plaintiff or that a reasonable accommodation was not possible without causing undue hardship upon its business. *Firestone Fibers*, 515 F.3d at 315. Although the inquiries of "reasonable accommodation" and "undue hardship" are separate, "there is much overlap between the two." *Id.* ("For instance, an accommodation that results in undue hardship almost certainly would not be viewed as one that would be reasonable.").

In assessing whether an employer's accommodation can be deemed reasonable, the Fourth Circuit has explained that a court should not impose "'an invariable duty [on the employer] to eliminate the conflict between workplace rules and religious practice.'" *Jacobs v. Scotland Mfg., Inc.*, No. 1:10CV814, 2012 WL 2366446, at *5 (M.D.N.C. 21 June 2012) (quoting *Firestone Fibers*, 515 F.3d at 314). Nor does the employer have an obligation to provide the employee with his preferred accommodation; that is, as "long as the employer has

14

offered a reasonable accommodation, it has fulfilled its duty under Title VII." *Henry v. Rexam Beverage Can of N. Am.*, No. CA 3:10-2800-MBS, 2012 WL 2502726, at *4 (D.S.C. 27 June 2012). An accommodation is deemed to be one causing undue hardship "'whenever that accommodation would result in 'more than a de minimis cost' to the employer.'" *Westbrook*, 51 F. Supp. 3d at 625 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67 (1986)); *Batson v. Branch Banking & Trust Co.*, No. CIV.A. RDB-11-01690, 2012 WL 4479970, at *5 (D. Md. 25 Sept. 2012) ("To show undue hardship in religious accommodation cases, an employer must prove that the cost of the accommodation would be more than 'de minimis.'").

Here, as noted, no accommodation was ultimately provided to plaintiff. Accordingly, the appropriate inquiry on this motion is whether providing an accommodation to plaintiff under these facts was possible without causing defendant undue hardship. The court finds that defendant has met its burden of establishing that it was not possible.

The accommodation sought here by plaintiff was to remain in his sales channel organization job without being subjected to fingerprinting. As noted, North Carolina law required all employees of an alarm systems business to be registered, which included being fingerprinted. N.C. Gen. Stat. § 74D-8(a)(1). Any accommodation requiring defendant to violate state law is inherently not reasonable and necessarily an undue hardship on defendant. *See Westbrook*, 51 F. Supp. 3d 612 at 625 ("Furthermore, an employer is not liable when the accommodation would require an employer to violate federal or state law." (citing *Baltgalvis*, 132 F. Supp. 2d at 419)); *Cherry*, 2009 WL 2518221, at *6 (holding that defendant had established undue hardship where plaintiff's requested accommodation would have violated Coast Guard Regulations).

15

Plaintiff suggests, without evidence, that after his termination some employees who were also in the outbound sales organization were permitted to sell items other than Intelligent Home and therefore would have been excepted from the fingerprinting requirement. He also presents the affidavit of Raymond Greene, an employee in the outbound sales organization at the same time as plaintiff, stating that to his personal knowledge, some employees were employed "making sales calls solely to potential cable TV and telephone users, and not potential Intelligent Home potential [sic] customers." (Decl. of Raymond Greene (D.E. 37-1) ¶ 2). Defendant has provided evidence, however, that because the sales channel organization was in the alarm systems business, *every* employee in the organization could be involved in selling or promoting Intelligent Home and that no employee in the organization was or could be excepted from the statutory requirement to be registered with the Board. (Aff. of Tonya Spivey ("Spivey Aff.") (D.E. 34-1 at pp.1-4) ¶¶ 3, 4; Supp. Aff. of Tonya Spivey (D.E. 41-2) ¶ 2). Notably, even taking Mr. Greene's statement as true, it still does not demonstrate that any of the employees he references were not fingerprinted, the central aspect of the accommodation sought by plaintiff. Thus, the accommodation sought by plaintiff was not reasonable and would cause undue hardship on defendant.

As noted, plaintiff did not request to be transferred to a different organization in lieu of being terminated. Defendant alleges that it did offer plaintiff the same option it made available to any employee whose background check was denied by the Board: to apply to another position within the company outside of the sales channel organization. (Spivey Aff. ¶¶ 9, 10). In the course of exploring that option, defendant determined that plaintiff was on a performance improvement plan implemented on 19 March 2012 for failure to meet his goals and also received documented corrective actions on 1 March 2012 and 7 May 2012 for attendance. (Spivey Aff. ¶

11). Defendant's Internal Transfer Policy[4] specifically provides that internal transfers are available only to employees in "good standing":

> 1. In order to be considered, all internal TWC applicants must meet eligibility guidelines, confirm interest in an open position and express their intent to seek consideration by submitting the appropriate forms via the Employees First page located on the Company's Intranet. TWC employees must follow the previously stated submission process in order to be considered an Internal candidate. . . . .
>
>     . . . .
>
> 5. The Recruiter should contact the originating business unit's Human Resources representative to request past performance reviews, confirm relevant job related information including salary, years of service, job title and verify if the Internal applicant is in "good standing." An applicant in "good standing" is one who has not been on a performance improvement plan or subject to a documented corrective action within the previous of six (6) months AND has a performance rating of "solid" or better.

(Internal Transfer Policy ¶¶ 1, 5). The Internal Transfer Policy applied to all employees without exception. (Spivey Aff. ¶ 13).

Therefore, even if plaintiff had requested a transfer, transferring him would have violated defendant's Internal Transfer Policy. A transfer would thereby have imposed on defendant more than a de minimis cost to its business and constituted an undue burden. *See, e.g., Joyner v. Garrett*, 751 F. Supp. 555, 564 (E.D. Va. 1990) ("[T]the duty to make a reasonable accommodation does not mean that an employer has to accommodate the employee, rather than discharge the employee, when the employee's performance is otherwise inadequate and the proposed accommodation would violate valid employer policies."); *see also Firestone Fibers*, 515 F.3d at 317 ("It is well established that Title VII does not require an employer to violate the

---

[4] Plaintiff argues that the policy did not apply to him on the grounds that the corporate entity for which he worked was not covered. But the policy itself expressly states that it "applies to all business units of TWC." (Internal Transfer Policy ¶ 18). Defendant has provided evidence that plaintiff's employer was defendant (Aff. of Martina Davis (D.E. 41-1) ¶ 3) and that TWC is not a legal entity but a trade name used by several Time Warner Cable, Inc. subsidiaries, including defendant (*id.* ¶ 6). The court finds plaintiff's argument that the Internal Transfer Policy did not apply to him meritless.

17

terms of a collective bargaining agreement, especially provisions pertaining to seniority-based scheduling."). Defendant has therefore met its burden of showing that transfer was not a reasonable accommodation for plaintiff. The record does not show that any other accommodations by defendant were possible.

For the foregoing reasons, the court concludes that defendant's election not to accommodate plaintiff's religious beliefs was based on the impossibility of doing so without undue hardship and not religious discrimination. Summary judgment should accordingly be awarded defendant on plaintiff's claim for religious discrimination.

### IV. PLAINTIFF'S NCEEPA CLAIM

NCEEPA provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, biological sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2. "'Given the similar language and underlying policy of § 143-422.2 and Title VII, 42 U.S.C. § 2000e et seq., the North Carolina Supreme Court explicitly has adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2.'" *Tran v. Novo Nordisk Pharm. Indus., Inc.*, No. 5:14-CV-254-FL, 2016 WL 1559137, at *11 (E.D.N.C. 16 Apr. 2016) (quoting *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995)). Accordingly, because plaintiff's Title VII claims fail as a matter of law, plaintiff's NCEEPA claim also fails. *Tran*, 2016 WL 1559137, at *11 ("Thus, a claim for wrongful discharge in violation of the public policy set forth in the NCEEPA rises and falls with its counterpart under Title VII."); *Hepburn*, 2014 WL 5039666, at *5 ("Plaintiff bases her NCEEPA claim on the same alleged conduct by defendants and because she cannot establish that she suffered any discrimination in violation of

18

Title VII, she also cannot prevail on a claim for wrongful discharge under the NCEEPA."). Defendant should therefore be awarded summary judgment on plaintiff's NCEEPA claim.

## CONCLUSION

For the foregoing reasons, there is no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law on all of plaintiff's claims, pursuant to Fed. R. Civ. P. 56. It is therefore RECOMMENDED that defendant's motion for summary judgment (D.E. 29) be ALLOWED, and judgment be entered DISMISSING this case with prejudice.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the respective parties or, if represented, their counsel. Each party shall have until 25 August 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the**

19

Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after filing of the objections.

SO ORDERED, this 11th day of August 2016.

*[signature]*
James E. Gates
United States Magistrate Judge